```
         UNITED STATES DISTRICT COURT
          MIDDLE DISTRICT OF FLORIDA
             FORT MYERS DIVISION
```

LOURDES CRUZ, PAUL FLAHERTY, JR.,
and CURTIS SMITH, on behalf of
themselves and all others similarly
situated,

                Plaintiffs,

vs.                      Case No.  2:07-cv-714-FtM-29DNF

CINGULAR WIRELESS, LLC a foreign
corporation now known as AT&T
Mobility LLC,

                Defendant.
_____

**OPINION AND ORDER**

     This matter comes before the Court on defendant's Amended Motion to Compel Arbitration and Dismiss Pursuant to the Federal Arbitration Act (Doc. #31) filed on December 28, 2007.  Plaintiff filed a Response (Doc. #43) on March 14, 2008 to which defendant filed a Reply (Doc. #47) on April 2, 2008.

**I.**

    The relevant facts are as follows: plaintiffs Lourdes Cruz, Paul Flaherty, Jr., and Curtis Smith (collectively, plaintiffs) entered into a Wireless Service Agreement (WSA) with AT&T Mobility, Inc. (AT&T), formerly known as Cingular Wireless, for wireless service.  The WSA expressly incorporates and includes by reference a "Terms of and Conditions" booklet.  This booklet includes an arbitration agreement, wherein AT&T and plaintiffs agree to "arbitrate all disputes and claims between us."  (Doc. #37-5, p.

20.)  Also included in the arbitration agreement is a provision requiring that arbitration be conducted on an individual, and not a class-wide basis.  (Doc. #37-5, pp. 20, 24.)

The arbitration agreement (hereinafter "agreement") outlines in detail the process for resolving disputes between AT&T and its customers.  (Doc. #37-5, pp. 20-24.)  The agreement provides that if the customer care department fails to provide a satisfactory solution to a complaint, the customer must send a Notice of Dispute to AT&T.  (Id. at p. 21.)  If AT&T and the customer are unable to resolve the dispute within thirty days, the customer may initiate arbitration by filling out a Demand for Arbitration Form and mailing copies to both the American Arbitrators Association and AT&T.  (Doc. #31, p. 6.)

In the event that a dispute is ultimately submitted to arbitration, AT&T is responsible for all of the filing, administrative and arbitrator fees incurred during the course of arbitration.[1]  (Doc. #37-5, p. 22.)  If an arbitrator finds AT&T liable for an amount that is greater than AT&T's last written settlement offer, but less than $5,000, AT&T will pay the customer $5,000 instead of the arbitrator's award.  In addition, if the arbitrator grants the customer an award that is greater than AT&T's last written offer, the customer is entitled to double the

---

[1]AT&T is not responsible for these fees if the arbitrator determines that the customer's claim is frivolous. (Doc. #37-5, p. 22.)

attorneys' fees incurred. (Id. at p. 23.) The agreement has no limitations on damages and allows the arbitrator to award injunctive relief.[2] (Id. at p. 24.) In the event that the arbitrator rules in favor of AT&T, the agreement provides that AT&T will not seek reimbursement of any of its attorneys' fees or costs. (Id. at pp. 20, 23.)

Notwithstanding the agreement, plaintiffs filed an Amended Class Action Complaint (Doc. #5), alleging that defendant fraudulently included a $2.99 monthly "Roadside Assistance" charge to plaintiffs' monthly bills in violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Florida Statute § 501.201, et seq. AT&T now seeks to enforce the arbitration agreement and dismiss the Amended Complaint. (Doc. #31.)

**II.**

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies to arbitration agreements involving interstate commerce. See 9 U.S.C. § 2. According to the FAA, any "written [arbitration] provision in . . . a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. There is a clear federal policy to "rigorously enforce agreements to arbitrate." Dean Witter

---

[2]Other features of the agreement include the option of either conducting arbitration in person, by telephone or with no hearing, and the proceedings will "take place in the county (or parish) of [the customer's] billing address." (Doc. #37-5, p. 22.)

Reynolds v. Byrd, 470 U.S. 213, 221 (1985). However, state law may invalidate an arbitration provision "provided the law at issue governs contracts generally and not arbitration agreements specifically." Bess v. Check Express, 294 F.3d 1298, 1306 (11th Cir. 2002)(citations omitted). "[G]enerally applicable contract defenses under state law, such as . . . unconscionability, may be applied to invalidate arbitration agreements without contravening §2." Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687 (1996); Global Travel Mktg. v. Shea, 908 So. 2d 392, 397 (Fla. 2005).

The FAA requires arbitration of a statutory cause of action unless arbitration impairs a statute's remedial function or renders it ineffective as a deterrent. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985). Florida courts have held that an arbitration agreement is unenforceable for public policy reasons if it defeats the remedial purpose of the statute upon which the action is based, or deprives the plaintiff of the ability to obtain meaningful relief. See Powertel, Inc. v. Bexley, 743 So. 2d 570, 576 (Fla. 1st DCA 1999); Alterra Healthcare Corp. v. Estate of Linton, 953 So. 2d 574, 578 (Fla. 1st DCA 2007)(holding an arbitration agreement void because it defeated the remedial purpose of the Nursing Home Residents Act by expressly limiting liability). Thus, "[t]he arbitrability of a statutory claim rests on the assumption that the arbitration agreement permits relief equivalent to that which is available in the courts." Powertel, 743 So. 3d at 576.

Plaintiffs' claim is brought under FDUTPA which is a remedial statute. "A remedial statute is designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good." Fonte v. AT&T Wireless Servs., 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005) (quoting Adams v. Wright, 403 So. 2d 391, 394 (Fla. 1981)), review denied 918 So. 2d 292 (Fla. 2005). FDUTPA was enacted "[t]o protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202 (2007). It was "designed to protect not only the rights of litigants, but also the rights of the consuming public at large." Holt v. O'Brien Imps. of Fort Myers, 862 So. 2d 87, 89 (Fla. 2d DCA 2003); see also Sarkis v. Pafford Oil Co., 697 So. 2d 524 (Fla. 1st DCA 1997). Florida courts have held that any limitations on remedies, including injunctive relief, for claims arising under FDUTPA render an arbitration agreement invalid. See, e.g., Holt, 862 So. 2d at 89 (finding arbitration provision invalid because plaintiff could not obtain injunctive relief); Powertel, 743 So. 2d 570 (invalidating arbitration agreement because plaintiff could not obtain punitive damages or declaratory/injunctive relief).

Although FDUTPA's claims are susceptible to class action litigation, see Turner Greenberg Assocs. v. Pathman, 885 So. 2d 1004 (Fla. 4th DCA 2004), the statute does not give a "blanket right" to litigate on a class wide basis. Fonte, 903 So. 2d at

1024-1025. The intent to create a non-waivable right to class action must be discerned from the text and legislative history of a statute, and Florida courts have held that "neither the text nor the legislative history of FDUTPA suggests that the legislature intended to confer a non-waivable right to class representation." Id. at 1025.

### III.

Plaintiffs argue that the Court should not enforce the arbitration provision because it violates public policy by hindering the remedial purposes of FDUTPDA. Specifically, plaintiffs assert that the provision is designed to prevent individuals with small claims from seeking remedies as a class and does not provide notice to the unsuspecting consumers. (Doc. #43, pp. 10-13.) Defendants counter that the arbitration provision does not violate public policy because it is an effective alternative to class action lawsuits and is more "pro consumer than any other arbitration provision in the country." (Doc. #31, pp. 4, 9-10.)

The Court finds that plaintiffs are all subject to a valid arbitration agreement. First, plaintiffs' reliance on S.D.S. Autos, Inc. v. Chrzanowski, 976 So. 2d 600 (Fla. 1st DCA 2007) and Powertel is misplaced. In S.D.S. Autos, the court struck down an arbitration provision which contained a class action ban on the grounds that it impermissibly frustrated the purpose of FDUTPA. However, in that case the dispute arose under FLA. STAT. § 501.976 (2005), a FDUTPA provision which only relates to car dealers. The

court in that case limited its holding to cases arising under FLA. STAT. § 501.976 (2005), whereas this case arises under FLA. STAT. § 501.204. That distinction is important because while a prevailing party in a FDUTPA action may recover attorney's fees and costs,[3] "an individual asserting a successful FDUTPA claim arising [specifically under FLA. STAT. § 501.976], may recover only such attorney's fees as are reasonable in light of the amount of the individual's actual damages." S.D.S. Autos, 976 So. 2d at 606. The difference in the amount available for attorneys' fees is what drove the S.D.S. Autos court to strike down the class action arbitration ban. In this case, there is no limitation on attorneys' fees, and under certain circumstances, customers may be entitled to double their attorneys' fees. (Doc. #37-5, p. 23.)

In Powertel, the court struck down an arbitration provision because it did not allow for either punitive damages or for injunctive relief. In striking down the provision, the court reasoned that "the arbitration clause expressly limits Powertel's liability to actual damages, thereby precluding the possibility that Powertel will ever be exposed to punitive damages, no matter how outrageous the conduct might be." Powertel, 743 So. 2d at 576. The court further explained that "the arbitration clause purports

---

[3]FLA. STAT. § 501.2105 (2007) provides in relevant part that:

In any civil litigation resulting from an act or practice involving a violation of this part . . . the prevailing party . . . may receive his or her reasonable attorney's fees and costs from the nonprevailing party.

to apply to an action under [FDUTPA], yet it does not authorize the arbitrator to afford all of the same remedies." Id. at 576-577. In this case, there is no question that the arbitration agreement provides all the same remedies available to plaintiffs under FDUTPA, as it states in relevant part that "[a]rbitrators can award the same damages and relief that a court can award." (Doc. #37-5, p. 20.)

Second, the Eleventh Circuit has rejected plaintiffs' assertion that because of the small nature of individual claims, attorneys are not likely to take individual cases (Doc. #43, p. 6-8). Jenkins v. First Am. Cash Advance of Ga., 400 F.3d 868, 878 (11th Cir. 2005). The Jenkins court explained that "federal circuit courts have recognized that arbitration agreements prohibiting class action relief do not necessarily choke off the supply of lawyers willing to pursue claims on behalf of debtors." Id. (citing Johnson v. West Suburban Bank, 225 F.3d 366, 374 (3d Cir. 2000)). "These courts explained that when the opportunity to recover attorneys' fees is available, lawyers will be willing to represent such debtors in arbitration." Id.

Third, the Court disagrees with plaintiffs' assertion that absent the availability of a Rule 23 type notice, AT&T will be able to continue its alleged illegal practices. (Doc. #43, pp. 6-9.) The agreement does not require consumers to execute a confidentiality agreement, thereby allowing consumers the option of disseminating the information in the manner of their choosing.

-8-

Finally, the Court notes that plaintiffs' Response fails to cite any cases within the Eleventh Circuit that support their position that the agreement should be stricken. The facts of a recent Eleventh Circuit decision finding a class action ban unconscionable are distinguishable from those in this case. In <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1220-1222 (11th Cir. 2007), the court struck down a class action ban because plaintiffs were not permitted to recover attorneys' fees for the violations alleged in the complaint. Additionally, if Comcast prevailed at arbitration, plaintiffs were required to reimburse Comcast for certain fees and costs. Here, the arbitration agreement requires AT&T to bear all the costs regardless of which party prevails. Furthermore, the one case within this jurisdiction that addressed an older version of the agreement found it to be valid. <u>See</u> <u>Fonte</u>, 903 So. 2d 1019. Therefore, the Court finds that the plaintiffs are bound by the agreement and defendant's motion is granted.

Accordingly, it is now

**ORDERED:**

1. Defendant's Amended Motion to Compel Arbitration and Dismiss Pursuant to the Federal Arbitration Act (Doc. #31) is **GRANTED** and the Amended Complaint (Doc. #5) is **dismissed.**

2. The Clerk shall enter judgment dismissing the Amended Complaint.

3. The Clerk is directed to terminate all deadlines and close the case file.

**DONE AND ORDERED** at Fort Myers, Florida, this __15th__ day of September, 2008.

JOHN E. STEELE
United States District Judge

Copies:
Counsel of record