# United States Court of Appeals
## For the Eleventh Circuit

2:07CV 714-FTM-JES-DNF

No. 08-16080-C

District Court Docket No.
07-00714-CV-FTM-29-DNF

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**

Aug 11, 2011

JOHN LEY
CLERK

LOURDES CRUZ,
on behalf of themselves and all others
similarly situated,
PAUL FLAHERTY, JR.,
on behalf of themselves and all others
similarly situated,
CURTIS SMITH,

          Plaintiffs-Appellants,

versus

CINGULAR WIRELESS, LLC,
a foreign corporation now known
as AT&T Mobility, LLC,

          Defendant-Appellee.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

-------------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
-------------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:        August 11, 2011
For the Court:   John Ley, Clerk
        By:      Gilman, Nancy



ISSUED AS MANDATE
SEP 1 4 2011
U.S. COURT OF APPEALS
ATLANTA GA

PUBLISH]

2011 SEP 16 PH 2: 05
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA
FILED

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-16080

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 11, 2011
JOHN LEY
CLERK

D.C. Docket No. 07-00714-CV-FTM-29-DNF

LOURDES CRUZ,
PAUL FLAHERTY, JR., and
CURTIS SMITH,
on behalf of themselves and all others
similarly situated,

Plaintiffs-Appellants,

versus

CINGULAR WIRELESS, LLC,
a foreign corporation now known
as AT&T Mobility, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(August 11, 2011)

Before MARCUS, FAY and ANDERSON, Circuit Judges.

MARCUS, Circuit Judge:

The Plaintiffs in this case are customers of Defendant AT&T Mobility, LLC ("ATTM"),[1] a cellular phone company. Each signed a contract with ATTM, agreeing that any disputes between themselves and ATTM would be resolved through binding arbitration on an individual, rather than classwide, basis. In spite of this contractual "class action waiver," the Plaintiffs sought to pursue their consumer fraud claims against ATTM in federal court as representatives of a putative class of similarly situated ATTM customers. When ATTM moved to dismiss the complaint and compel arbitration in accordance with the terms of the contracts, the Plaintiffs argued that the contractual class action waiver was unenforceable, because it effectively immunized ATTM from liability for its wrongdoing, in violation of Florida public policy.

The district court granted ATTM's motion to dismiss the complaint and compel arbitration, holding that Florida public policy did not create a blanket prohibition on class action waivers, and that under the particular facts of the case, the arbitration provision was enforceable in full, where the arbitral forum preserved all statutory remedies, the provision did not limit the consumers' right to recoup attorneys' fees, ATTM agreed to pay all costs of arbitration, and no confidentiality

---

[1] ATTM was formerly known as Cingular Wireless. Cingular Wireless was acquired by AT&T Inc. in 2006, and renamed AT&T Mobility, LLM in January 2007. [Dkt. 37, ¶ 4.]

agreement prevented the Plaintiffs from notifying other ATTM customers of their potential claims. This timely appeal ensued.

After this Court heard oral argument in this case,[2] the Supreme Court rendered a decision in AT&T Mobility LLC v. Concepcion, 563 U.S. --, 131 S. Ct. 1740 (2011), holding that a state law which "classif[ied] most collective-arbitration waivers in consumer contracts as unconscionable," and thus unenforceable, was preempted by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. Concepcion, 131 S. Ct. at 1746, 1753. We subsequently requested supplemental briefing from the parties regarding the effect of Concepcion on this case. After careful consideration, we now hold that, in light of Concepcion, the class action waiver in the Plaintiffs' arbitration agreements is enforceable under the FAA. Insofar as Florida law would invalidate these agreements as contrary to public policy (a question we need not decide), such a state law would "stand[] as an obstacle to the accomplishment and execution" of the FAA, id. at 1753 (quotation omitted), and thus be preempted. Accordingly, we affirm the district court's order dismissing the Plaintiffs' claims and compelling arbitration.

I.

---

[2] We temporarily deferred our resolution of this appeal to await the Florida Supreme Court's answers to a series of questions certified to that court in a related case, Pendergast v. Sprint Nextel Corp., 592 F.3d 1119 (11th Cir. 2010).

Consumers wishing to obtain cellular telephone service from ATTM must agree to a Wireless Service Agreement ("WSA"),[3] which sets forth or incorporates by reference certain standardized "Terms of Service." [Dkt. 37, ¶ 6.] The Terms of Service contain a mandatory arbitration agreement, providing that the customer ("you") and ATTM "agree to arbitrate all disputes and claims between us." [Dkt. 37-15, at 2.] The arbitration agreement further includes a restriction on class actions, as follows:

> YOU AND [ATTM] AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. Further, unless both you and [ATTM] agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding.

[Dkt. 37-15, at 6.][4]  A so-called blow-up clause provides that if the class action waiver "is found to be unenforceable, then the entirety of this arbitration provision

---

[3] Customers either physically sign their WSA at a store, or else execute an electronic signature by calling a toll-free phone number. [Dkt. 37, ¶ 10.] ATTM will not activate service until the customer has signed the WSA, either physically or electronically. [Id.]

[4] This is the wording of ATTM's current arbitration provision, as revised in December 2006. Pursuant to the "change-in-terms" provision contained in all WSAs, which authorizes ATTM to make unilateral amendments to the Terms of Service, this revised arbitration provision became effective on all then-existing ATTM subscribers upon notice of the change in December 2006. [Dkt. 37, ¶ 27.] All new WSAs executed since March 2007 also contain this provision. [Id.] Even before the December 2006 revision, all ATTM service agreements included mandatory arbitration provisions with substantially identical class action waivers. Appellant Br. at 6 n.4.

shall be null and void." [Id.]

Notwithstanding the mandatory arbitration provision in their WSAs, the

Plaintiffs filed an Amended Class Action Complaint against ATTM in the United

States District Court for the Middle District of Florida. [Compl., Dkt. 5.] The

Plaintiffs alleged that ATTM violated the Florida Deceptive and Unfair Trade

Practices Act ("FDUTPA"),[5] Fla. Stat. § 501.201, et seq., by charging them $2.99 a

month for a "Roadside Assistance Plan" ("RAP") that they never ordered. [Compl.

¶¶ 1, 32-33.] The RAP purports to provide customers with towing services, dead-

battery jump starts, flat-tire assistance, fuel delivery, lockout assistance, and key

replacement services. [Compl. ¶ 4.]  Although ATTM calls the RAP "optional," the

Plaintiffs allege that ATTM automatically enrolled customers for the service

without the customers' knowledge or consent. [Compl. ¶¶ 4-5.] They further allege

that the monthly charges were "hidden" in their cellular telephone bills without

notice or warning, and that even once the Plaintiffs noticed the charges and

---

[5] FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). Its purpose is "[t]o protect the consuming public and legitimate business enterprises" from those who engage in the prohibited acts. Id. § 501.202(2). The statute provides a private right of action for any "person who has suffered a loss as a result of a violation of this part," permitting recovery of "actual damages, plus attorney's fees and court costs," id. § 501.211(2), as well as allowing for declaratory judgments and injunctions, id. § 501.211(1). As to recoverable attorney's fees, the statute provides that "the prevailing party, after judgment in the trial court and exhaustion of all appeals, if any, may receive his or her reasonable attorney's fees and costs from the nonprevailing party." Id. § 501.2105(1).

requested their removal, ATTM refused to remove past charges and allowed

additional charges to accrue during a waiting period before the Plaintiffs'

cancellation became effective. [Compl. ¶¶ 25, 27.] The complaint requested

monetary and injunctive relief, and also sought certification of a proposed class

consisting of "[a]ll persons and entities who (1) enrolled in a[n ATTM] account in

the state of Florida; and (2) were subjected to a monthly charge for the Roadside

Assistance Plan without ever requesting or enrolling in said plan." [Compl. ¶ 16.]

ATTM moved to dismiss the complaint and compel arbitration pursuant to

the arbitration agreement that the Plaintiffs had signed. [Dkt. 31.] The Plaintiffs

countered that the arbitration provision was unenforceable, on the ground that the

class action waiver embedded in the provision hindered the remedial purposes of

FDUTPA by effectively immunizing ATTM from liability for unlawful business

practices, in violation of public policy.

The district court granted ATTM's motion to dismiss the complaint and

compel arbitration, holding that ATTM's class action waiver did not violate

Florida public policy. See Cruz v. Cingular Wireless, LLC, No.

2:07-cv-714-FtM-29DNF, 2008 WL 4279690, at *4 (M.D. Fla. Sept. 15, 2008).

The district court observed that in general, under Florida law, "an arbitration

agreement is unenforceable for public policy reasons if it defeats the remedial

purpose of the statute upon which the action is based, or deprives the plaintiff of the ability to obtain meaningful relief." Id. at *2 (citing Alterra Healthcare Corp. v. Estate of Linton, 953 So. 2d 574, 578 (Fla. Dist. Ct. App. 2007); Powertel, Inc. v. Bexley, 743 So. 2d 570, 576 (Fla. Dist. Ct. App. 1999)). The court then discerned that although FDUTPA claims are susceptible to class action litigation, FDUTPA does not confer a blanket, non-waivable right to class representation. Id. at *3 (citing Fonte v. AT&T Wireless Servs., Inc., 903 So. 2d 1019, 1024-25 (Fla. Dist. Ct. App. 2005)). The court noted that Florida intermediate appellate courts[6] have invalidated as against public policy arbitration agreements that purport to limit the substantive remedies available under FDUTPA, or the consumer's ability to recover full attorney's fees. Id. at *2-3 (citing S.D.S. Autos, Inc. v. Chrzanowski, 976 So. 2d 600 (Fla. Dist. Ct. App. 2007); Holt v. O'Brien Imps. of Fort Myers, Inc., 862 So. 2d 87, 89 (Fla. Dist. Ct. App. 2003); Powertel, 743 So. 2d 570)). By contrast, a Florida intermediate appellate court enforced an arbitration agreement containing a class action waiver where the agreement provided that the consumer retained all substantive rights and remedies granted

---

[6] "Absent a decision by the highest state court or persuasive indication that it would decide the issue differently, federal courts follow decisions of intermediate appellate courts in applying state law." Galindo v. ARI Mut. Ins. Co., 203 F.3d 771, 775 (11th Cir. 2000); see also Pardo v. State, 596 So.2d 665, 666 (Fla. 1992)) ("[T]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by th[e Florida Supreme] Court." (quotation omitted)).

under FDUTPA, and did not eliminate the consumer's right to recover full attorney's fees.[7] See id. (citing Fonte, 903 So. 2d 1019).[8]

With this framework in mind, the district court examined the arbitration agreement at issue between ATTM and the Plaintiffs, and concluded it was valid and enforceable under Florida law, because (1) "there is no question that the arbitration agreement provides all the same remedies available to plaintiffs under FDUTPA, as it states in relevant part that '[a]rbitrators can award the same damages and relief that a court can award,'" id. at *3 (quoting arbitration agreement [Dkt. 37-5, at 20]); (2) the agreement allows a consumer who prevails in arbitration to recover attorney's fees and costs from ATTM without limitation, and

_____

[7] The arbitration clause in Fonte originally included a bar on attorney's fees. However, the court concluded the bar defeated the remedial purpose of FDUTPA, and severed it from the agreement as against public policy. Fonte, 903 So. 2d at 1024. The court then enforced the remainder of the arbitration agreement, finding it no longer offended public policy. Id.

[8] The same Florida district court of appeal recently limited Fonte, by striking down a class waiver provision in an arbitration agreement on the ground that it prevented consumers from vindicating their statutory rights, in violation of public policy. McKenzie v. Betts, 55 So. 3d 615 (Fla. Dist. Ct. App. 2011). The plaintiffs in McKenzie presented credible evidence that, although the relevant consumer statutes provided for attorney's fees and the arbitration agreement at issue did not facially limit that right, the fee awards in such cases are frequently inadequate. Id. at 619-20. Therefore, because the cases were "complex" and "time-consuming," id. at 623, 629, and yet presented a substantial risk of an inadequate fee award, competent attorneys would refuse (and already had refused) to pursue such cases on an individual basis. Id. at 619-20, 623, 629. The trial court that presided over the testimony concluded that it is "virtually impossible," id. at 620, for "individual plaintiffs [to] obtain competent counsel without the procedural vehicle of a class action," id. at 629. Given this evidentiary finding, the Florida appellate court found that, like in the First Circuit case of Kristian v. Comcast Corp., 446 F.3d 25 (1st Cir. 2006), the class waiver "undermined the presumption that arbitration provided a fair and adequate mechanism for enforcing statutory rights," and thus struck the waiver. Id. at 628-29.

even allows an award of double attorney's fees in certain instances, id.; (3) there was no confidentiality rule preventing the Plaintiffs from disseminating information about their claims to other potential claimants, id. at *4; and (4) ATTM agreed to bear all costs of arbitration regardless of which party prevailed, id.[9] In light of these features, the district court concluded that the arbitration

---

[9] ATTM touts the following "pro-consumer" features of its arbitration provision, as described by the Court in Concepcion (where the same ATTM arbitration provision was at issue):

> In the event the parties proceed to arbitration, the agreement specifies that [ATTM] must pay all costs for nonfrivolous claims; that arbitration must take place in the county in which the customer is billed; that, for claims of $10,000 or less, the customer may choose whether the arbitration proceeds in person, by telephone, or based only on submissions; that either party may bring a claim in small claims court in lieu of arbitration; and that the arbitrator may award any form of individual relief, including injunctions and presumably punitive damages. The agreement, moreover, denies [ATTM] any ability to seek reimbursement of its attorney's fees, and, in the event that a customer receives an arbitration award greater than [ATTM]'s last written settlement offer, requires AT&T to pay a $[5,000] minimum recovery and twice the amount of the claimant's attorney's fees.

Concepcion, 131 S. Ct. at 1744; see also Appellee Br. at 2-3; [Dkt. 37-6, at 17-21]. In spite of these pro-consumer features, the Plaintiffs argue that ATTM can effectively avoid ever paying attorney's fees or the $5,000 premium award simply by refunding the disputed amount (or a little more) to the customer during the mandatory 30-day waiting period between when ATTM receives the customer's "Notice of Dispute" in the mail and when the customer is permitted to commence arbitration by mailing a "Demand for Arbitration" to the American Arbitration Association and ATTM. Appellant Br. at 11. Because few consumers will pursue their claims that far, ATTM thus "pay[s] a handful of small claims and in the process get[s] away with stealing hundreds of millions of dollars." Appellant Br. at 10 (quoting Declaration of Marcus Viles [Dkt. 43-2, at 4]); see also Concepcion, 131 S. Ct. at 1760 (Breyer, J., dissenting) ("[A]s the Court of Appeals recognized, AT&T can avoid the [premium] payout (the payout that supposedly makes the [plaintiffs]' arbitration worthwhile) simply by paying the claim's face value, such that 'the maximum gain to a customer for the hassle of arbitrating a $30.22 dispute is still just $30.22.'") (quoting Laster v. AT&T Mobility LLC, 584 F.3d 849, 855, 856 (9th Cir. 2009), rev'd sub nom. Concepcion, 131 S. Ct. 1740).

agreement did not defeat the remedial purposes of FDUTPA, and was therefore
valid and enforceable under Florida law.  Arguing that the district court failed to
appreciate the functionally exculpatory effect of the class action waiver, the
Plaintiffs appealed the district court's order to this Court.

II.

We review <u>de novo</u> an order granting a motion to dismiss a complaint and
compel arbitration.  <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216, 1219 (11th Cir. 2007).
The issue before us is whether the arbitration agreement's class action waiver is
unenforceable as a violation of Florida public policy.  We must affirm the district
court's order compelling individual arbitration if <u>either</u> the class action waiver is
enforceable under Florida law <u>or</u> the FAA preempts Florida law to the extent it
would invalidate the waiver.[10]

The FAA makes written agreements to arbitrate "valid, irrevocable, and
enforceable, save upon such grounds as exist at law or in equity for the revocation
of any contract."  9 U.S.C. § 2.  This provision reflects a "liberal federal policy
favoring arbitration," <u>Concepcion</u>, 131 S. Ct. at 1745 (quoting <u>Moses H. Cone
Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)), and requires courts

---

[10] "This court may affirm a judgment on any legal ground, regardless of the grounds
addressed and relied upon by the district court."  <u>Cuddeback v. Fla. Bd. of Educ.</u>, 381 F.3d 1230,
1235 (11th Cir. 2004).

10

to "rigorously enforce agreements to arbitrate" according to their terms. Dean

Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985); accord Concepcion, 131

S. Ct. at 1745.

Under the so-called saving clause of FAA § 2, an arbitration agreement may

be invalidated by "generally applicable contract defenses, such as fraud, duress, or

unconscionability." Concepcion, 131 S. Ct. at 1746 (quotation omitted).

However, the saving clause does not authorize the invalidation of agreements to

arbitrate "by defenses that apply only to arbitration or that derive their meaning

from the fact that an agreement to arbitrate is at issue." Id. Thus, "[a]lthough

[FAA] § 2's saving clause preserves generally applicable contract defenses," it

does not "preserve state-law rules that stand as an obstacle to the accomplishment

of the FAA's objectives." Id. at 1748.

In Concepcion, the Supreme Court considered a putative class action

brought by ATTM subscribers, who sought to avoid enforcement of the very same

arbitration provision at issue here.[11] See id. at 1744. The Concepcion plaintiffs

---

[11] In both this case and Concepcion, the governing arbitration agreement is ATTM's
December 2006 provision, requiring that all disputes be settled by arbitration in the parties'
"individual capacity, and not as a plaintiff or class member in any purported class or
representative proceeding," and that "the arbitrator may not consolidate more than one person's
claims, and may not otherwise preside over any form of a representative or class proceeding."
Concepcion, 131 S. Ct. at 1744 & n.2 (quoting arbitration provision). The only difference
between the provision in Concepcion and the provision sub judice is the amount of the premium
award -- i.e., the amount that the agreement entitles a consumer to recover if her arbitral award is
greater than ATTM's last written settlement offer made before arbitration -- which apparently is

argued that the class action waiver embedded in their arbitration agreement was unconscionable and thus unenforceable under state law because in practice it operated to "exempt[] . . . [ATTM] from responsibility for its own fraud." Id. at 1746 (quoting Discover Bank v. Superior Court, 113 P.3d 1100, 1110 (Cal. 2005) (alterations and internal quotation marks omitted). Because unconscionability is a "ground that 'exist[s] at law or in equity for the revocation of any contract,'" the plaintiffs argued that their arbitration agreements could be invalidated in accordance with the saving clause of FAA § 2. Id. at 1746 (quoting 9 U.S.C. § 2) (alteration in original).

The Supreme Court did not dispute that California law, as enunciated by the California Supreme Court in Discover Bank, 113 P.3d 1100, would invalidate the class action waiver as unconscionable, based on its satisfaction of a three-part requirement laid out in Discover Bank: (1) "the waiver is found in a consumer contract of adhesion" drafted by a party that has superior bargaining power; (2) "disputes between the contracting parties predictably involve small amounts of damages"; and (3) "it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of

---

tied to the jurisdictional limit of the customer's local small claims court. Appellee Br. at 2 n.2 (citing Terms of Service [Dkt. 37-6, at 20]). In Florida, that limit is $5,000, and accordingly, so is the premium award. Id. (citing Fla. Small Claims R. 7.010). In Concepcion, which arose out of California, the premium award was $7,500. Concepcion, 131 S. Ct. at 1744.

individually small sums of money." <u>Concepcion</u>, 131 S. Ct. at 1746 (quoting

<u>Discover Bank</u>, 113 P.3d at 1110).  However, the Supreme Court concluded that

the triggering conditions of California's <u>Discover Bank</u> rule imposed no effective

limit on its application.  In particular, the Court called the requirement that claims

be predictably small "toothless and malleable," and found the other two

requirements universally satisfied, at least in the consumer context, as "the times in

which consumer contracts were anything other than adhesive are long past," and

"the latter [third requirement] has no limiting effect, as all that is required is an

allegation." <u>Id.</u> at 1750.  The Court thus implied that although the <u>Discover Bank</u>

rule was cast as an application of unconscionability doctrine, in effect, it set forth a

state policy placing bilateral arbitration categorically off-limits for certain

categories of consumer fraud cases, upon the mere <u>ex post</u> demand by any

consumer. <u>See id.</u>

The Court then held that, like preferring fact-finding to be conducted by a

jury, this state-imposed policy preference "interferes with fundamental attributes of

arbitration and thus creates a scheme inconsistent with the FAA." <u>Id.</u> at 1748.

Declaring that "[t]he overarching purpose of the FAA . . . is to ensure the

enforcement of arbitration agreements according to their terms so as to facilitate

streamlined proceedings," <u>id.</u>, the Court explained that, in light of this purpose,

13

conditioning the enforceability of arbitration agreements on the availability of

classwide arbitration procedures is inconsistent with the FAA.  According to the

Court, the "'changes brought about by the shift from bilateral arbitration to

class-action arbitration' are 'fundamental.'"  Id. at 1750 (quoting Stolt-Nielsen

S.A. v. AnimalFeeds Int'l Corp., 559 U.S. --, 130 S. Ct. 1758, 1776 (2010)).  Class

arbitration, the Court explained, eliminates the "principal advantage of arbitration"

-- its informality -- and instead makes the process slower, more costly, more

ensnared in procedural formality, and more risky to defendants.  Id. at 1751-52.

Therefore, because it "stands as an obstacle to the accomplishment and execution

of the full purposes and objectives of Congress," id. at 1753 (quoting Hines v.

Davidowitz, 312 U.S. 52, 67 (1941)), the Court concluded that a state policy that

allows any party to a consumer contract to demand classwide procedures ex post,

in spite of her agreement to submit all disputes to bilateral arbitration, is preempted

by the FAA, id. at 1750, even if it may be "desirable for [other] reasons," id. at

1753.  Accordingly, California's Discover Bank rule was preempted.

　　　Here, the Plaintiffs have argued that ATTM's class action waiver is

unenforceable because it would exculpate ATTM from liability under state law and

would thus defeat the remedial purpose of FDUTPA, in violation of public policy.

Appellant Br. at 17.  In particular, the Plaintiffs assert that the arbitration provision

14

at issue hinders the remedial purpose of FDUTPA because the vast majority of these numerous, small-value claims against ATTM will go unprosecuted unless they may be brought as a class. The Plaintiffs identify two reasons why numerous, potentially meritorious RAP-based claims against ATTM will slip through the cracks if the class action waiver stands: first, attorneys will refuse to represent ATTM consumers for these legally complex but small-value claims unless they can be aggregated; and second, absent class-action notice procedures, the vast majority of ATTM customers will never know that their rights have been violated. Appellant Br. at 47-54. At bottom, the Plaintiffs argue that because FDUTPA is a remedial consumer statute -- intended to have deterrent as well as compensatory effect -- public policy dictates that their claim is of a sort that "must proceed as a class action or not at all." Appellant Br. at 16 (alteration and internal quotation marks omitted).

However, the Concepcion Court specifically rejected this public policy argument, which was expressly made by the dissent in that case: "The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Concepcion, 131 S. Ct. at 1753 (citation omitted). Thus, in light of

15

Concepcion, state rules mandating the availability of class arbitration based on generalizable characteristics of consumer protection claims -- including that the claims "predictably involve small amounts of damages," id. at 1746 (quoting Discover Bank, 113 P.3d at 1110), that the company's deceptive practices may be replicated across "large numbers of consumers," id. (quoting Discover Bank, 113 P.3d at 1110), and that many potential claims may go unprosecuted unless they may be brought as a class, id. at 1753 -- are preempted by the FAA, even if they may be "desirable," id. Therefore, to the extent that Florida law would be sympathetic to the Plaintiffs' arguments here, and would invalidate the class waiver simply because the claims are of small value, the potential claims are numerous, and many consumers might not know about or pursue their potential claims absent class procedures, such a state policy stands as an obstacle to the FAA's objective of enforcing arbitration agreements according to their terms, and is preempted.[12]

---

[12] We conclude that Florida law does not yield a certain result in this case and cannot provide an alternative ground for our decision. Compare Fonte, 903 So. 2d at 1025 (enforcing class action waiver over public policy challenge because under the arbitration agreement, "the consumer retains all substantive rights and remedies against AT&T that he or she is granted under FDUTPA, namely, actual damages, declaratory and injunctive relief, and attorney's fees"), with McKenzie, 55 So. 3d at 619, 623 (striking class action waiver as contrary to public policy even though arbitration agreement did not facially limit the consumer's right to statutory remedies or attorney's fees, based on credible "evidence that competent counsel would not represent individual plaintiffs on these small claims," leaving "customers without a viable means of seeking redress for the alleged violations of Florida law"), S.D.S. Autos, 976 So. 2d at 604, 606 (striking class action waiver as "hampering important remedial purposes of FDUTPA"

In their supplemental briefs, the Plaintiffs offer two arguments for why
Concepcion does not control the outcome of this case. First, they say that
Concepcion only preempts inflexible, categorical state laws that mechanically
invalidate class waiver provisions in a generic category of cases, without requiring
any evidentiary proof regarding whether parties could vindicate their statutory
rights in arbitration. Appellant Supp. Br. at 4-6; Appellant Supp. Reply at 3-4.
They argue that this case escapes Concepcion's preemptive effect, because Florida
law, unlike California law, invalidates class action bans only when the
individualized facts of the case demonstrate that the ban is functionally
exculpatory. Appellant Supp. Br. at 5; Appellant Supp. Reply at 4. Second, they
claim that Concepcion was only concerned with state laws that impose
nonconsensual class arbitration on parties. Because ATTM's blow-up provision
assures that ATTM will not be forced into class arbitration -- but only class
litigation -- they claim that Concepcion is not implicated here. Appellant Supp. Br.
at 15-18; Appellant Supp. Reply at 9-10. Neither argument is successful.

---

because, absent class procedures, individuals asserting successful FDUTPA claims against
automobile dealers under Fla. Stat. § 501.976, which limits a prevailing consumer's attorney fee
award to an amount that is "reasonable[]" in light of actual damages, would receive inadequate
fee awards, given the individually small nature of the claims), and Powertel, 743 So. 2d at 576-
77 (striking arbitration clause containing class action waiver as unconscionable on the grounds
that it was one-sided and would defeat the remedial purpose of FDUTPA, because the arbitration
agreement precluded punitive damages, declarative and injunctive relief, and the ability to
pursue as a class "potential claims [that] are too small to litigate individually").

The second argument is disposed of easily. It would be anomalous indeed if

the FAA -- which promotes arbitration, see Concepcion, 131 S. Ct. at 1749 -- were

offended by imposing upon arbitration nonconsensual procedures that interfere

with arbitration's fundamental attributes, but not offended by the nonconsensual

elimination of arbitration altogether. Cf. id. at 1747 ("When state law prohibits

outright the arbitration of a particular type of claim, the analysis is straightforward:

The conflicting rule is displaced by the FAA."). In fact, the parties in Concepcion

faced no risk of being forced into class arbitration either, because nonconsensual

class arbitration was already prohibited under Stolt-Nielsen. See 130 S. Ct. at 1775

(holding that "a party may not be compelled under the FAA to submit to class

arbitration unless there is a contractual basis for concluding that the party agreed to

do so"). Moreover, the arbitration agreement in Concepcion contained the very

same blow-up clause that is present here, see Brief for Respondents at 3,

Concepcion, 131 S. Ct. 1740 (No. 09-893), 2010 WL 4411292 at *3 ("Concepcion

Resp. Br.") (quoting arbitration agreement) -- further assuring that ATTM was at

no greater risk of being forced into class arbitration in Concepcion than it is here.

Even a cursory reading of the opinion reveals that the Concepcion Court described

the "fundamental" changes brought about by the shift from bilateral to class

arbitration to show that nonconsensual class procedures are inconsistent with the

18

FAA -- not to argue for increased class action litigation. Accordingly, <u>Concepcion</u> cannot be distinguished on this ground.

The <u>Plain</u>tiffs' first argument presents more difficulty. It is true that the Plaintiffs here have presented a factual record not present in <u>Concepcion</u> -- the affidavits of three Florida consumer law attorneys who attested that they would not represent consumers on an individual basis in pursuing their RAP-based claims against ATTM. All three examined both ATTM's arbitration agreement (including its allegedly pro-consumer features) and the Plaintiffs' complaint, and concluded that it would not be cost-effective for them to pursue such claims against ATTM except on an aggregated basis. [<u>See</u> Dkt. 43 at 6-9, 43-2, 43-3, 43-4.] The Plaintiffs also provide some statistical evidence -- which the consumer-plaintiffs also presented in <u>Concepcion</u> -- showing the "infinitesimal" percentage of ATTM subscribers who have arbitrated a dispute with ATTM, "starkly demonstrat[ing] the claim-suppressing effect of the [class action] ban." <u>Concepcion</u> Resp. Br. at *4, *5, *40; <u>see</u> Appellant Br. at 13 (noting that "only 0.000007% of ATTM customers filed a notice of dispute against ATTM"); Appellant Supp. Br. at 14 (same).

However, at least as applied to the facts of this case, we believe that faithful adherence to <u>Concepcion</u> requires the rejection of the Plaintiffs' argument. The Plaintiffs' evidence goes only to substantiating the very public policy arguments

that were expressly rejected by the Supreme Court in <u>Concepcion</u> -- namely, that

the class action waiver will be exculpatory, because most of these small-value

claims will go undetected and unprosecuted. The Court observed that California's

<u>Discover Bank</u> rule too had "its origins in California's unconscionability doctrine

and California's policy against exculpation." <u>Concepcion</u>, 131 S. Ct. at 1746; <u>see</u>

<u>also</u> <u>Concepcion</u> Resp. Br. at *19 (noting that "California's unconscionability

doctrine incorporates the venerable prohibition on exculpatory clauses," and

quoting state statute rendering unenforceable "[a]ll contracts which have for their

object, directly or indirectly, to exempt anyone from responsibility for his own

fraud") (quoting Cal. Civ. Code § 1668 (alteration in original)). Indeed, the

<u>Concepcion</u> consumer-plaintiffs' brief to the Supreme Court repeatedly

emphasized that California's rule was a "fact-specific" inquiry that only screened

out class action bans "in circumstances where they would . . . be exculpatory."

<u>Concepcion</u> Resp. Br. at *20; <u>see also</u> <u>id.</u> at *12 ("The FAA favors arbitration, not

exculpation.").

The Court found, however, that the California rule swept too broadly, in

subjecting whole classes of claims to mandatory class procedures. The rule

suggested by the Plaintiffs here would equally encompass the field of small-value

consumer fraud claims. Indeed, the Plaintiffs all but concede that their rule would

preserve mandatory class actions for all "small but numerous" consumer claims. [See Dkt. 43 at 16 ("Clearly a contractual provision precluding class relief for small but numerous FDUTPA claims against [ATTM] impermissibly frustrates the remedial purposes of FDUTPA.").] Unquestionably, if Florida adopted such a rule, it would be preempted by the FAA, under the reasoning in Concepcion.

Moreover, we need not reach the question of whether Concepcion leaves open the possibility that in some cases, an arbitration agreement may be invalidated on public policy grounds where it effectively prevents the claimant from vindicating her statutory cause of action. See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 (1985) ("[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."); cf. Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000) (recognizing that "large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum"). Even if the Mitsubishi vindication principle applies to state as well as federal statutory causes of action, see Booker v. Robert Half Int'l, Inc., 413 F.3d 77, 79, 81-83 (D.C. Cir. 2005) (Roberts, J.), and even if it could be applied to strike down a class

action waiver in the appropriate circumstance,[13] such an argument is foreclosed here, because the Concepcion Court examined this very arbitration agreement and concluded that it did not produce such a result. See Concepcion, 131 S. Ct. at 1753 (noting ATTM's arbitration provision ensured "that aggrieved customers who filed claims would be essentially guaranteed to be made whole" (alteration and internal quotation marks omitted)).

In addition, like the plaintiffs in Concepcion, the Plaintiffs here do not allege any defects in the formation of the contract, aside from its generally adhesive nature, which alone is insufficient to invalidate a consumer contract. See id. at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past."); see also id. at 1753 (Thomas, J., concurring) ("As I would read it, the FAA requires that an agreement to arbitrate be enforced unless a party successfully challenges the formation of the arbitration agreement, such as by proving fraud or duress.").

In light of Concepcion, our resolution of this case does not depend on a

---

[13] See, e.g., Chen-Oster v. Goldman, Sachs & Co., No. 10 Civ. 6950(LBS)(JCF), 2011 WL 2671813, *3-5 (S.D.N.Y. July 7, 2011) (denying motion for reconsideration in light of Concepcion of order invalidating arbitration agreement because it did not allow for class proceedings, based on conclusion that individual arbitration would preclude plaintiff from enforcing her "substantive right under Title VII to bring a pattern or practice claim," which under governing substantive law may only be brought as a class); but cf. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 32 (1991) (holding that the inability to arbitrate on a classwide basis was not an appropriate ground for refusing to enforce an arbitration provision with respect to statutory Age Discrimination in Employment Act claim).

construction of Florida law.  To the extent that Florida law would require the availability of classwide arbitration procedures in this case -- in spite of the parties' agreement to submit all disputes to arbitration "on an individual basis" only [Dkt. 37-15, at 1] -- simply because the case involves numerous small-dollar claims by consumers against a corporation, many of which will not be brought unless the Plaintiffs proceed as a class, such a state rule is inconsistent with and thus preempted by FAA § 2.  See Concepcion, 131 S. Ct. at 1748; cf. Day v. Persels & Assocs., LLC, No. 8:10-CV-2463-T-33TGW, 2011 WL 1770300, at *5 (M.D. Fla. May 9, 2011) ("The Florida Supreme Court's answer will have no determinative effect here because, even if it says that the class action waivers are invalid, that answer would be pre-empted by the FAA under [Concepcion].").

III.

The district court's order dismissing the Plaintiffs' complaint and compelling arbitration of the Plaintiffs' claims is, therefore, AFFIRMED.

A True Copy - Attested
Clerk U.S. Court of Appeals,
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

23